# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**CASE NO.   23-cr-32-NYW**

**UNITED STATES OF AMERICA,**

                   **Plaintiff,**

**v.**

**1.      ATP OILFIELD SERVICES LLC,**

                   **Defendant.**

---

**DEFERRED PROSECUTION AGREEMENT**

---

Defendant ATP Oilfield Services LLC ("ATP Oilfield Services"), by its undersigned representative, reflected in Attachment A, and the United States Attorney's Office for the District of Colorado ("the Government") enter into this deferred prosecution agreement ("the Agreement"), the terms and conditions of which are as follows:

**<u>Criminal Information and Acceptance of Responsibility</u>**

1.      ATP Oilfield Services acknowledges and agrees that the Government will file a one-count criminal Information in the United States District Court for the District of Colorado charging ATP Oilfield Services with one count of Conspiracy to Violate the Clean Air Act, in violation of Title 18, United States Code, Section 371, and Title 42, United States Code, Section 7413(c)(2)(C), (the "Information"), arising out of the

1

conduct described in the Statement of Facts, attached hereto as Attachment B and
incorporated by reference into this Agreement ("Covered Conduct").  In so doing, ATP
Oilfield Services: (a) knowingly waives any right it may have to indictment on this
charge, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the
United States Constitution, Title 18, United States Code, Section 3161, and Federal
Rule of Criminal Procedure 48(b); (b) knowingly waives any objection with respect to
venue to any charges by the United States arising out of the Covered Conduct and
consents to the filing of the Information, as provided under the terms of this Agreement,
in the United States District Court for the District of Colorado.  The Government agrees
to defer prosecution of ATP Oilfield Services pursuant to the terms and conditions
described below.

     2.     ATP Oilfield Services admits, accepts, and acknowledges that it is
responsible under United States federal law for the acts of its owners, employees, and
agents as charged in the Information, and as set forth in the Statement of Facts, and
that the allegations described in the Information and the facts described in the
Statement of Facts are true and accurate.  Should the Government pursue the
prosecution that is deferred by this Agreement, ATP Oilfield Services stipulates to the
admissibility of the Statement of Facts in any proceeding by the Government, including
any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the
Statement of Facts at any such proceeding. ATP Oilfield Services agrees that, effective
as of the date ATP Oilfield Services signs this Agreement, in any prosecution that is

deferred by this Agreement, it will not dispute the Statement of Facts set forth in this Agreement, and, in any such prosecution, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing hearing or other hearing. In addition, in connection therewith, ATP Oilfield Services agrees not to assert any claim under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") or any other federal rule that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form.

### Term of the Agreement

3.      This Agreement is effective for a period beginning on the date on which the Information is filed (the "Effective Date") and ending thirty-six months after that date (the "Term").  After twenty-four months, ATP may request that the Government terminate this request early. If ATP has satisfactorily met all the requirements of this Agreement, the Government will likely agree to early termination of the Agreement. If the Court refuses to grant exclusion of time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(2), the Term shall be deemed to have not begun and all the provisions of the Agreement shall be deemed null and void, except that the statute of limitations for any prosecution relating to the conduct described in the Statement of Facts shall be tolled from the date on which this Agreement was signed until the date the Court refuses to

3

grant the exclusion of time.

## Relevant Considerations

4.      The Government enters into this Agreement based on the individual facts and circumstances presented by this case and ATP Oilfield Services, including:

a.      ATP Oilfield Services cooperated extensively and fulsomely in this investigation, providing information about its own conduct and the conduct of others, and has agreed to continue its cooperation;

b.      ATP Oilfield Services provided the Government with all relevant facts known to it, including information about the individuals involved in the Covered Conduct, and assisted the Government in understanding the technical complexities of diesel vehicle emission control systems and practices utilized to alter such systems;

c.      ATP Oilfield Services immediately ceased the Covered Conduct;

d.      ATP Oilfield Services readily agreed to improve its compliance measures, as set forth in Attachment C to this Agreement (Compliance Program);

e.      ATP Oilfield Services readily agreed to submit annual reports to the Government, as set forth in Attachment D (Compliance Reporting).

## Future Cooperation and Disclosure Requirements

5.      ATP Oilfield Services shall cooperate fully with the Government in any and all matters relating to the conduct described in this Agreement and the attached

4

Statement of Facts, subject to applicable laws and regulations, until the later of the date upon which all related investigations and potential prosecutions arising out of such conduct are concluded or the end of the Term of this Agreement. ATP Oilfield Services agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, the following:

      a.    ATP Oilfield Services shall truthfully disclose all factual information requested by the Government.

      b.    ATP Oilfield Services agrees to affirmatively furnish to the government all documents and other material that may be relevant and that are in the defendant's possession or control.

      c.    ATP Oilfield Services, through its owners, employees, or agents, agrees to testify fully and truthfully at any proceeding in the District of Colorado or elsewhere as requested by the government.

      d.    ATP Oilfield Services agrees to at all times give complete, truthful, and accurate information and testimony and to fully and truthfully disclose all information with respect to the activities of the defendants and others concerning all matters about which the government inquires.

## Total Assessment

6.    The Government and ATP Oilfield Services agree that ATP Oilfield Services will be liable for a total fine of **$107,500**, to include a fine and an amount

5

dedicated to a community service project, and with 25% of the total assessment to be held in abeyance and forgiven pending successful completion of the term of this Agreement.

7.    ATP Oilfield Services agrees to direct $50,000 to a community service project, described as follows: a program operated by the Colorado Department of Public Health and Environment that assists indigent drivers whose vehicles have failed emission tests by repairing the vehicle's malfunctioning emission controls.  That payment will be due within 6 months of Court approval of the Deferred Prosecution Agreement.  ATP Oilfield Service agrees to direct the remaining amount of the total assessment to the general court fund pursuant to payment instructions provided by the Government.

### Conditional Release from Liability

8.    Subject to the provisions in the section titled "Breach of the Agreement" below, the Government agrees that it will not bring any criminal case against ATP Oilfield Services relating to any of the Covered Conduct.  The Government, however, may use any information related to the Covered Conduct against ATP Oilfield Services: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.

9.    This Agreement does not provide any protection against prosecution for

6

any future conduct by ATP Oilfield Services.

## Compliance and Reporting Program

10.     ATP Oilfield Services agrees to enter into a Compliance and Reporting Program (detailed in Attachments C and D). As one requirement of the Compliance Program (and as detailed further therein), ATP Oilfield Services agrees to cease operating and to destroy or scrap any deleted/tampered vehicles it owns or operates (or that a subsidiary or affiliate owns or operates) not more than six months after this Agreement is approved by the Court. These vehicles are specifically described in the Statement of Facts.

## Deferred Prosecution

11.     The Government agrees that any prosecution of ATP Oilfield Services for the Covered Conduct described in the attached Statement of Facts is hereby deferred for the Term of this Agreement. To the extent there is conduct disclosed by ATP Oilfield Services that is not set forth in the attached Statement of Facts or Information, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

12.     The Government further agrees that if ATP Oilfield Services fully complies with all of its obligations under this Agreement, the Government will not continue the criminal prosecution against ATP Oilfield Services described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire. Within thirty days of this Agreement's expiration, the Government shall seek dismissal with prejudice of the

7

criminal Information filed against ATP Oilfield Services described in Paragraph 1, and agrees not to file charges in the future against ATP Oilfield Services based on the Covered Conduct described in the attached Statement of Facts. If, however, the Government determines during this thirty-day period that the Company breached the Agreement during the Term, the Government's ability to pursue other remedies remains in full effect.

## Breach of the Agreement

13.    If, during the Term of this Agreement, ATP Oilfield Services (a) commits any criminal violation under United States federal law; (b) provides in connection with this Agreement materially false, incomplete, or misleading information; (c) fails to cooperate as set forth in this Agreement; (d) fails to implement the compliance measures as set forth in Attachment C; or (e) otherwise fails to perform or fulfill its obligations under this Agreement, ATP Oilfield Services shall thereafter be subject to prosecution for any federal criminal violation of which the Government has knowledge, including, but not limited to, the charge in the Information described in Paragraph 1, which may be pursued by the Government in the United States District Court for the District of Colorado or any other appropriate venue. Determination of whether ATP Oilfield Services has breached the Agreement and whether to pursue prosecution of ATP Oilfield Services shall be in the Government's sole discretion. Any such prosecution may be premised on information obtained by the Government from any sources, including information provided by ATP Oilfield Services or its personnel. Any

8

such prosecution relating to the Covered Conduct or relating to conduct associated with the Covered Conduct and known to the Government before the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against ATP Oilfield Services, or its subsidiaries and affiliates, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, ATP Oilfield Services agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year.

14.    In the event the Government determines that ATP Oilfield Services has breached this Agreement, the Government agrees to provide ATP Oilfield Services with written notice of such breach before instituting any prosecution resulting from such breach. Within thirty days of receipt of such notice, ATP Oilfield Services shall have the opportunity to respond to the Government in writing to explain the nature and circumstances of such breach, as well as the actions ATP Oilfield Services has taken to address and remediate the situation, which explanation the Government shall consider in determining whether to pursue prosecution of the Company.

15.    In the event the Government determines that ATP Oilfield Services has breached this agreement:  (a) all statements made by or on behalf of ATP Oilfield Services to the Government or to the Court, including the attached Statement of Facts, and any testimony given by ATP Oilfield Services before a grand jury, a court, or any

9

tribunal, whether before or after this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Government against ATP Oilfield Services, provided such statements or testimony are otherwise admissible under the Federal Rules of Evidence, except for the attached Statement of Facts, which is admissible in whole; and (b) ATP Oilfield Services shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, Section 1B1.1(a) of the USSG, or any other federal rule that any such statements or testimony made by or on behalf of ATP Oilfield Services before or after this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible.  The decision whether conduct or statements of any present or future owner, or employee, or any person acting on behalf of, or at the direction of, ATP Oilfield Services, will be imputed to ATP Oilfield Services for the purpose of determining whether ATP Oilfield Services has violated any provision of this Agreement shall be in the sole discretion of the Government.

16.     ATP Oilfield Services acknowledges that the Government has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if ATP Oilfield Services breaches this Agreement and this matter proceeds to judgment.  ATP Oilfield Services further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

**Sale, Merger, or Other Change in Corporate Form of ATP Oilfield Services**

17.     ATP Oilfield Services agrees that in the event that, during the Term, it
undertakes any change in corporate form, including if it sells, merges, or transfers
business operations, it shall include in any contract for sale, merger, transfer, or other
change in corporate form a provision binding the purchaser, or any successor in interest
thereto, to the obligations described in this Agreement.  The purchaser or successor in
interest must also agree in writing that the Government's ability to declare breach under
this Agreement is applicable in full force to that entity.  ATP Oilfield Services agrees that
the failure to include these provisions in the transaction will make any such transaction
null and void.  ATP Oilfield Services shall provide notice to the Government at least
thirty days prior to undertaking any such sale, merger, transfer, or other change in
corporate form.  The Government shall notify ATP Oilfield Services prior to such
transaction (or series of transactions) if it determines that the transaction(s) will have the
effect of circumventing or frustrating the enforcement purposes of this Agreement.  If, at
any time during the Term, ATP Oilfield Services engages in a transaction that has the
effect of circumventing or frustrating the enforcement purposes of this Agreement, the
Government may deem it a breach of this Agreement.

**Limitations on Binding Effect of Agreement**

18.     This Agreement is binding on ATP Oilfield Services and the Government
but specifically does not bind any other component of the Department of Justice, other
federal agencies, or any state, local or foreign law enforcement or regulatory agencies,

11

or any other authorities, although the Government will bring the cooperation of ATP

Oilfield Services and its compliance with its other obligations under this Agreement to

the attention of such agencies and authorities if requested to do so by ATP Oilfield

Services.

## Notice

19.    Any notice to the Government under this Agreement shall be given by

personal delivery, overnight delivery by a recognized delivery service, or registered or

certified mail, addressed to:

Chief, Criminal Division
U.S. Attorney's Office
District of Colorado
1801 California Street, Ste 1600
Denver, CO 80202

20.    Any notice to ATP Oilfield Services under this Agreement shall be given

by personal delivery, overnight delivery by a recognized delivery service, or registered

or certified mail, addressed to:

ATP Oil Field Services, LLC
1247 Factory Dr.
Fort Lupton, CO 80621

21.    Notice shall be effective upon actual receipt by the Government or ATP

Oilfield Services.

## Complete Agreement

22.    This Agreement sets forth all the terms of the agreement between ATP

Oilfield Services and the Government.  No amendments, modifications or additions to

12

this Agreement shall be valid unless they are in writing and signed by the Government,

the attorneys for ATP Oilfield Services, and a duly authorized representative of ATP

Oilfield Services.

**AGREED:**

FOR ATP OILFIELD SERVICES:

Date: 1-30-2023              By: _____
                                 [Authorized Representative]
                                 Co-Owner, ATP Oilfield Services LLC

Date: 2/2/23                By: _____
                                 Patrick Ridley
                                 Attorney for Defendant

Date: 2/3/2023              By: _____
                                 Jennifer Lorenz
                                 Attorney for Defendant

13

FOR THE U.S. ATTORNEY'S OFFICE, DISTRICT OF COLORADO:

Date:  2/13/2023 _ _ _          By:          COLE FINEGAN
                                             United States Attorney

                                             By: _____
                                             Rebecca S. Weber
                                             Assistant United States Attorney
                                             United States Attorney's Office
                                             1801 California Street, Suite 1600
                                             Denver, Colorado 80202
                                             Telephone: (303) 454-0100
                                             Fax: (303) 454-0409
                                             E-mail: Rebecca.Weber@usdoj.gov
                                             Attorney for the United States

                                             By: _____
                                             Linda S. Kato
                                             Special Assistant United States Attorney
                                             United States Attorney's Office
                                             1801 California Street, Suite 1600
                                             Denver, Colorado 80202
                                             Telephone: (303) 312-7149
                                             Fax: (303) 312-6953
                                             E-mail: Linda.Kato@epa.gov
                                             Attorney for the United States

14

## ATTACHMENT A

### **CERTIFICATE OF AUTHORIZED REPRESENTATIVE**

I have read the Deferred Prosecution Agreement between ATP OILFIELD SERVICES LLC ("ATP OILFIELD SERVICES") and the United States Attorney's Office for the District of Colorado and carefully reviewed every part of it with outside counsel.

I hereby certify that I am a duly appointed corporate officer and/or authorized representative of ATP OILFIELD SERVICES.

I am authorized, empowered, and directed to take any and all actions on behalf of ATP OILFIELD SERVICES as may be necessary or appropriate and to enter into and comply with all provisions of a Deferred Prosecution Agreement with the United States Attorney's for the District of Colorado.

I understand the terms of the Deferred Prosecution Agreement and voluntarily agree, on behalf of ATP OILFIELD SERVICES, to each of its terms. Before signing this agreement, I consulted with outside counsel for ATP OILFIELD SERVICES. Outside counsel fully advised me of the company's rights, possible defenses, the Sentencing Guidelines provisions, and the consequences of entering into this Deferred Prosecution Agreement.

No promises or inducements have been made other than those contained in the Deferred Prosecution Agreement. No one has threatened or forced me in any way to enter into this Deferred Prosecution Agreement.

I am satisfied with outside counsel's representation in this matter.


By:                                                          Date:

_____                    _____
                                                                    1-30-2023
Tonya Platt
Co-Owner
ATP OILFIELD SERVICES

ATTACHMENT B

**STATEMENT OF FACTS**

The following Statement of Facts is incorporated by reference as part of the
Deferred Prosecution Agreement (the "Agreement") between the United States
Attorney's Office for the District of Colorado ("the Government") and ATP OILFIELD
SERVICES LLC ("ATP OILFIELD SERVICES").  ATP OILFIELD SERVICES hereby
agrees and stipulates that the following information is true and accurate.  ATP
OILFIELD SERVICES admits, accepts and acknowledges that it is responsible for the
acts of its owners, employees, and agents as set forth below.  Should the Government
pursue the prosecution that is deferred by the Agreement, ATP OILFIELD SERVICES
agrees that it will neither contest the admissibility of, nor contradict, the Statement of
Facts in any such processing.  The following facts establish beyond a reasonable doubt
the charges set forth in the criminal Information attached to this Agreement.

ATP OILFIELD SERVICES is a diesel repair shop located in Fort Lupton,
Colorado.  Company E.D. was a diesel repair shop located in Windsor, Colorado and
co-owned and operated by Person A.

From in or around in or around January 2017 through October 2019, ATP
OILFIELD SERVICES disabled emissions control components on its customers' heavy-
duty diesel vehicles. In order to complete the "delete" jobs on these vehicles, ATP
OILFIELD SERVICES conspired with Company E.D. to tamper with the "on board
diagnostic" systems (OBDs)[1] on these vehicles.  This tampering is frequently referred to

---

[1] OBDs are monitoring devices required under the Clean Air Act to be installed on vehicles to monitor the
vehicles' emissions control systems to ensure they are functioning properly. If an OBD detects a
malfunction in the emissions control system, it will illuminate a "malfunction indicator light" (MIL) on the

as "tuning" an OBD. One purpose for "tuning" an OBD is to allow the vehicles to
continue to seemingly operate normally while the emissions control system is disabled,
which reduces the high costs associated with maintaining or repairing components of
the emissions control systems on heavy-duty diesel trucks. However, as a
consequence, tampered vehicles spew substantially more deleterious pollutants such
as nitrogen oxides ($NO_x$), carbon monoxide (CO), non-methane hydrocarbons (NMHC)
and particulate matter (PM) into the air, presenting a risk to the environment and public
health. Tests conducted by EPA have found that completely deleting a diesel truck's
emissions controls can increase the truck's tailpipe emissions of $NO_x$ by a factor of
approximately 310 times, tailpipe CO by a factor of approximately 120 times, tailpipe
NMHC by a factor of approximately 1,100 times, and tailpipe PM by a factor of
approximately 40 times.

      Company E.D. and others associated with Company E.D. would instruct
individuals at ATP OILFIELD SERVICES to connect a laptop computer to the vehicle's
OBD port. Through a remote connection, using a program called "Team Viewer,"
individuals at Company E.D. located in Colorado, would run software programs to
reprogram or "tune" the vehicle's OBD. These programs would tamper with, render
inaccurate, and disable the monitoring functions of the OBDs so they would no longer
detect malfunctions in the emissions control systems.

      ATP OILFIELD SERVICES received instruction from Company E.D. on how to

---

vehicle's dashboard and record a "diagnostic trouble code" (DTC) in the vehicle's computer, which
facilitates the detection and diagnosis of malfunctions. Disabling the MIL and DTC functions serves to
conceal the malfunction caused by tampering. If the malfunction is serious and remains unresolved, the
OBD may also cause some vehicles to "derate" or go into "limp mode," that is, reduce the vehicle's
maximum speed to incentivize the operator to repair the malfunction.

remove or alter hardware components on the emissions control systems of vehicles.
ATP OILFIELD SERVICES routinely removed or altered hardware components on
customers' vehicles, including hollowing out or removing the diesel particulate filter
("DPF") and/or the selective catalytic reduction ("SCR") system and removing or
blocking off the exhaust gas recirculation ("EGR").

In furtherance of the conspiracy and to effect its objects, coconspirators,
including ATP OILFIELD SERVICES, Company E.D., Person A, and others, committed
the following overt acts:

ATP OILFIELD SERVICES engaged Company E.D. to tamper with, or tune, a
vehicle's OBD by filling out an "ECM[2] Form" that provided key parameters for the
vehicle, such as the engine serial number, the truck make and model, the VIN, the tire
brand and size, and the turbo type.  The information on this form was used by Company
E.D. to tune the OBD to prevent it from monitoring for and detecting malfunctions in the
emissions control system. Many of these "ECM Forms" instructed Company E.D. as to
which monitoring function of the vehicle's OBD should be disabled, using language such
as "DPF, DEF, EGR delete."[3]  An individual at ATP OILFIELD SERVICES then emailed
or faxed the ECM Form to Company E.D. in Colorado.

After receiving the ECM Form, individuals at Company E.D. would contact
individuals at ATP OILFIELD SERVICES and instruct them to plug a laptop computer,
usually purchased from Company E.D., into the vehicle's OBD port.  Individuals at

---

[2] An "electronic control module" (ECM) is essentially an on-board computer that receives inputs from
various sensors and sends outputs through activators to control engine, vehicle, or equipment functions,
including emission control components. OBDs operate as a system within the ECM.
[3]  The "exhaust gas recirculation" (EGR) system and the "diesel particulate filter" (DPF) are components
of a heavy-duty diesel vehicle's emissions control system. "Diesel exhaust fluid" (DEF) is used in the
"selective catalytic reduction" (SCR) system, another emissions control component.

Company E.D. then tuned or reprogrammed the OBD, tampering with and rendering ineffective its monitoring function.

For each tampered vehicle, Company E.D. sent an invoice to ATP OILFIELD SERVICES typically charging approximately $2,000 to $2,300 (and up to $3,800). Company E.D. typically used the code language "Cummins ECM Repair" on the invoice to disguise the line item for emissions control system tampering.

ATP OILFIELD SERVICES typically charged its customers an additional $500 in excess of Company E.D.'s charges for the tampering, which represented ATP OILFIELD SERVICES's profit for the tuning of each vehicle.

As of July 2022, two of the vehicles listed below were owned or operated by ATP OILFIELD SERVICES and were still in operation with the emissions systems disabled. The serial numbers of the engines in those two vehicles are 79806540 and 79645493.

Between in or around January 2017 and October 2019, ATP OILFIELD SERVICES paid Company E.D. approximately $35,100 to disable the OBDs on the following 15 commercial motor vehicles containing heavy-duty diesel engines. Each of these vehicles was required by the Clean Air Act and by regulation to have a functioning OBD installed and maintained.

| E.D. Invoice Number | Engine Manu-facturer | Engine Serial Number | Engine Year | Engine Family | Price E.D. Charged |
|---|---|---|---|---|---|
| 134181 | Cummins | 79564532 | 2012 | CCEXH0912XAP | $2,000 |
| 134754 | Cummins | 79564537 | 2012 | CCEXH0912XAP | $2,000 |
| 135103 | Cummins | 73670980 | 2014 | | $2,000 |
| 135843 | Cummins | 73670977 | 2014 | | $2,300 |
| 135969 | Cummins | 79423809 | 2010 | ACEXH0912XAP | $2,300 |
| 136627 | Maxforce | Y4125340 | 2011 | BNVXH07570GA | $3,800 |
| 137148 | Cummins | 79806540 | 2015 | | $2,300 |
| 137810 | Cummins | 79789296 | 2014 | | $2,300 |
| 137886 | Cummins | 79654994 | 2013 | | $2,300 |
| 138214 | Cummins | 79745511 | 2014 | | $2,300 |
| 138351 | Cummins | 79645493 | 2013 | | $2,300 |
| 138379 | Cummins | 79423809 | 2010 | ACEXH0912XAP | $2,300 |
| 139311 | Cummins | 79747881 | 2014 | | $2,300 |
| 139886 | Cummins | 79781311 | 2014 | | $2,300 |
| 140766 | Cummins | 79955626 | 2017 | | $2,300 |

ATTACHMENT C

**COMPLIANCE PROGRAM**

ATP OILFIELD SERVICES LLC ("the defendant"), through its authorized representative
(set forth in Attachment A), agrees to the following monitoring and compliance
measures during the term of the Deferred Prosecution Agreement:

Definitions:

   a.  "Vehicle" means any (1) "motor vehicle" as defined under the Clean Air Act, 42
U.S.C. § 7550(2), which includes any self-propelled truck, semi-truck, car, van,
camper, bus, or any other vehicle used to transport persons or property on
streets or highways; and (2) "nonroad vehicle" as defined under the Clean Air
Act, 42 U.S.C. § 7550(11), which includes any engine-powered vehicle such as
construction, agricultural, or recreational equipment that is not designed for use
on streets or highways.

   b.  "Vehicle tampering" means any steps taken to remove, render inoperable,
override, modify, or alter any component of any vehicle's emissions control
system, including but not limited to the selective catalytic reduction (SCR),
exhaust gas recirculation (EGR), periodic trap oxidizer (PTOX), diesel particulate
filter (DPF), diesel oxidation catalyst (DOC), or engine control module (ECM), or
the onboard diagnostic (OBD) system.

   c.  "Delete device" includes, but is not limited to, an, "EGR delete," "DPF delete,"
"defeats," "defeat device," "delete kit," "upgrade kit," "conversion kit," "tuner,"
"tune," "programmer," "block plate," "straight pipe," or any other device designed
to override, modify, alter, or allow the removal of any component of a vehicle's
emissions control system.

   d.  "Tampered vehicle" means any vehicle that has been modified pursuant to
"vehicle tampering."

Terms:

   1.  Within six months of Court approval of the Deferred Prosecution Agreement, the
defendant agrees to restore to stock any tampered vehicles it owns or operates
(or that a subsidiary or affiliate owns or operates).  These vehicles are described
in the Statement of Facts.  If any other vehicles are later identified as being
tampered vehicles that are owned or operated by the defendant or its
subsidiaries or affiliates, the defendant agrees to immediately cease operating
and to restore these vehicles to stock, or destroy or scrap those vehicles.
      a.  For any tampered vehicles that are restored to stock, the defendant shall
obtain and present a certification from a dealership licensed by the
vehicle's Original Equipment Manufacturer (OEM) that the vehicle has
been restored to its certified configuration.

1

    b.  For any tampered vehicles that are not restored to stock, the defendant shall drill a three-inch hole in the vehicle's engine block into one or more cylinders and provide proof of the engine destruction, including photographs of the vehicle's VIN, engine serial number, and the engine after the hole has been drilled. The remainder of the vehicle can be sold for scrap or recycling.

2. The defendant agrees to permit unrestricted entry to federal, state, and local officials to inspect premises, including hard copy and electronic documents, at any time and without advance notice, for violations of the Clean Air Act, 42 U.S.C. §§ 7413(c)(2) and 7522(c)(3).

3. The defendant agrees not to engage in, or conspire or cause others to engage in, vehicle tampering.

4. For any tampered vehicle, the defendant agrees not to work on, repair, or service (1) the OBD system or (2) any hardware relating to the emissions control system, including the SCR, EGR, PTOX, DPF, and DOC.
    a.  Exception: the defendant may perform work on the OBD and emissions control system of a tampered vehicle for the purpose of restoring the emissions control system on the tampered vehicle to its certified configuration, that is, restoring it to stock.

5. The defendant agrees to submit to the U.S. Attorney's Office an annual report (described in Attachment D) detailing the company's compliance measures and confirming, if true, that the company has not knowingly engaged in any violations of the Clean Air Act, 42 U.S.C. §§ 7413(c)(2) and 7522(c)(3).  The first certification shall be submitted one year from the date on which the Information is filed, and shall be filed annually on that date until the Term of the Agreement is concluded.

ATTACHMENT D

## **ANNUAL REPORT**

Definitions:

    a.  "Vehicle" means any (1) "motor vehicle" as defined under the Clean Air Act, 42 U.S.C. § 7550(2), which includes any self-propelled truck, semi-truck, car, van, camper, bus, or any other vehicle used to transport persons or property on streets or highways; and (2) "nonroad vehicle" as defined under the Clean Air Act, 42 U.S.C. § 7550(11), which includes any engine-powered vehicle such as construction, agricultural, or recreational equipment that is not designed for use on streets or highways.

    b.  "Vehicle tampering" means any steps taken to remove, render inoperable, override, modify, or alter any component of any vehicle's emissions control system, including but not limited to the selective catalytic reduction (SCR), exhaust gas recirculation (EGR), periodic trap oxidizer (PTOX), diesel particulate filter (DPF), diesel oxidation catalyst (DOC), or engine control module (ECM), or the onboard diagnostic (OBD) system, through the use of a "delete device."

    c.  "Delete device" includes, but is not limited to, an, "EGR delete," "DPF delete," "defeats," "defeat device," "delete kit," "upgrade kit," "conversion kit," "tuner," "tune," "programmer," "block plate," "straight pipe," or any other device designed to override, modify, or alter any component of a vehicle's emissions control system.

    d.  "Tampered vehicle" means any vehicle that has been modified pursuant to "vehicle tampering."

Please submit the following certification to:

Chief, Criminal Division
U.S. Attorney's Office for the District of Colorado
1801 California Street, Suite 1600
Denver, CO 80202

## **Certifications**

ATP OILFIELD SERVICES LLC ("the defendant" or "the Company"), through its duly authorized representative, certifies the following with respect to ATP OILFIELD SERVICES LLC, its affiliates and subsidiaries, and any of its owners, employees, agents, or contractors:

for the time frame of _____ through _____,

1. The Company has not engaged in, conspired with, or caused others to engage in, vehicle tampering.

2. The Company has not worked on, repaired, or serviced (1) the OBD system; or (2) any hardware relating to the emissions control system, including the SCR, EGR, PTOX, DPF, and DOC; for any tampered vehicle.

3. If the Company has performed work on the OBD and/or emissions control system of a tampered vehicle for the purpose of restoring the emissions control system on the tampered vehicle to its certified configuration, that is, restoring it to stock, please identify any such vehicles in an Attachment by year, make, model, engine serial number, and VIN.

4. The Company has ceased operating and has restored to stock or destroyed or scrapped any vehicle it owned or operated that was subject to "vehicle tampering."

5. The Company has not knowingly engaged in any violations of the Clean Air Act, 42 U.S.C. §§ 7413(c)(2) and 7522(c)(3).

6. If the Company is unable to make any of the above certifications, the Company shall detail why in an Attachment to this Certification.

I, as a duly authorized representative of ATP OILFIELD SERVICES LLC, certify under penalty of perjury that the foregoing is true and correct.


_____                    _____
Signature                                Date


_____
Name and Title

2